Stephen M. Lobbin (SBN 181195)
sml@smlavvocati.com
Austin J. Richardson (SBN 319807)
ajr@smlavvocati.com
Julia M. Skyhar (SBN 340227)
jms@smlavvocati.com
**SML Avvocati P.C.**
888 Prospect Street, Suite 200
San Diego, California 92037
Tel: 949.636.1391

Attorneys for Plaintiffs

# UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

### WESTERN DIVISION

| | |
|---|---|
| **ENGINEER.AI CORPORATION d/b/a BUILDER.AI**, a Delaware corporation,<br><br>Plaintiffs,<br><br>v.<br><br>**APPY PIE LLC**, a Virginia company, and **APPY PIE LLP**, an India company,<br><br>Defendants. | Case No. 2:22-cv-05376-SPG-JEM<br><br>**FIRST AMENDED COMPLAINT**<br><br>**DEMAND FOR JURY TRIAL** |

Pursuant to Rule 15(a)(1)(A), for its Amended Complaint, Plaintiff Engineer.ai Corporation d/b/a Builder.ai hereby alleges as follows:

## JURISDICTION AND VENUE

1. This is an action including for a declaratory judgment, business disparagement and interference with contractual relations and prospective advantage. This Court has subject matter jurisdiction including under 28 U.S.C. §§ 1332, 1367, and 2201-2202.

2. This Court has personal jurisdiction over Defendants because they reside and conduct business in California, and have committed the unlawful acts alleged herein including in this jurisdiction.

3. Venue is proper in this Judicial District under 28 U.S.C. §§ 1391 and 1400.

## PARTIES

4. Plaintiff is a Delaware corporation having its principal U.S. place of business in Utah.

5. Upon information and belief, Defendant Appy Pie LLC is a Virginia company having a principal place of business at 4410 East Claiborne Square, Suite 334, Hampton, Virginia 23666.

6. Upon information and belief, Defendant Appy Pie LLP is a foreign company having a principal place of business in Noida 201301-201305, India.

## FACTUAL BACKGROUND

7. For many years, Plaintiff and its affiliates have advertised their services in good standing, including via competitor bidding in Google Ads. Just within the last several days, Google has confirmed in writing the following:

> Google would never allow [Plaintiff] to do anything illegal on our own platform. If it were illegal to serve competitor KWs in India, Google would automatically disable your keywords. . . . Google will likely challenge anything that affects our customer's ability to enter into auctions.
>
> . . .
>
> Google's policy of allowing keyword bidding on all terms, including trademarked terms, does not violate local trademark laws . . . . Jurisdictions across the world, including India, have found our policy to be pro-user as it enhances user choice and encourages competition. Presently, there is no change to the Google Ads Trademarks policy as applicable in India.

8. Despite this clearly legal competitive advertising according to Google and Plaintiff's years of conduct in accordance with all international laws and

Google's policies, Defendant Appy Pie LLP recently sued Plaintiff and several of its affiliate entities in India, received an injunction order dated July 20, 2022, and delivered a subsequent notice dated July 26, 2022 (including the July 20, 2022 order), which recites in part as follows:

> [B]y way of the interim [July 20, 2022] order under reference, the Hon'ble Delhi High Court had been pleased to injunct [Plaintiff] from using "Appy Pie" or other identical/similar key words for the purpose of its advertising within the territory of India.
>
> [I]t has been observed that [] the addressees have failed to comply with the [] order . . . . [I]t is clear that a simple google search for "Appy Pie App maker," "Appy Pie App Developer," "Appy Pie App Builder," "Appy Pie make an App," "Appy pie App Creator," "Appy Pie Create an App" etc. are still returning a result of Builder.AI.  You may note that the said searches are being carried out from a local/domestic (Indian) IP address . . . .
>
> [Y]our conduct is also contemptuous as you willingly continue to defy the orders dated 20.07.2022 in letter as well as in spirit.
>
> Under the circumstances, you addressees are hereby called upon by this Notice to forthwith withdraw all such advertisement campaigns which impinge upon the registered trademark APPY PIE and further comply with the order dated 20.07.2022 passed by the Hon'ble Delhi High Court filing which my aforesaid client shall be left with no other choice but to initiate contempt of Court proceedings against you the addressees for willful & deliberate defiance of Court orders.

9.     Submitted herewith is a true and correct copy of Defendants' July 26, 2022 notice.

10.    Defendants' misuse of the courts in India and disparaging notice to Plaintiff, both of which are at odds with Google's advertising policies and longstanding practice, has caused reputational and monetary damage to Plaintiff.  At a minimum, Defendants' actions have raised a substantial controversy between the parties concerning Plaintiff's similar advertising practices in the United States and around the world.

11. In the United States, Defendants have infringed Plaintiff's trademarks, including related to BUILDER (U.S. Trademark Application Ser. Nos. 97303793 and 97339130), BUILDER.AI (U.S. Trademark Application Ser. Nos. 97303814 and 97339051), BUILDER CLOUD (U.S. Trademark Application Ser. No. 97339088), BUILDER NOW (U.S. Trademark Application Ser. No. 97339103), and BUILDER STUDIO STORE (U.S. Trademark Application Ser. No. 97343132).

12. The infringement occurs in many ways, including as a result of Defendants using these trademarks (or portions thereof) to direct consumers from Plainitiff as an intended Internet search result, to Defendants as a result of consumer confusion.

## FIRST CLAIM FOR RELIEF

### (Trademark Infringement)

13. Plaintiff incorporates by this reference all of the allegations stated in the above paragraphs.

14. Through many years of consistent, creative effort, Plaintiff has become recognized by the consuming public via its business name BUILDER and related trademarks.

15. In the United States, Plaintiff owns many trademarks, including BUILDER (U.S. Trademark Application Ser. Nos. 97303793 and 97339130), BUILDER.AI (U.S. Trademark Application Ser. Nos. 97303814 and 97339051), BUILDER CLOUD (U.S. Trademark Application Ser. No. 97339088), BUILDER NOW (U.S. Trademark Application Ser. No. 97339103), and BUILDER STUDIO STORE (U.S. Trademark Application Ser. No. 97343132).

16. Because of the popularity and success of Plaintiff's products and services, Plaintiff's trademarks have become distinctive; that is, Plaintiff's trademarks indicate to consumers that the source and origin of these products is Plaintiff, not competitors or others. For example, Plaintiff's marks related to

BUILDER, BUILDER.AI, BUILDER CLOUD, BUILDER NOW, and BUILDER STUDIO STORE are distinctive trademarks among the relevant consuming public.

17. Defendants have used identical and/or confusingly similar marks for their business, products and services, including but not limited to Defendants using these trademarks (or portions thereof) to direct consumers from Plainitiff as an intended Internet search result, to Defendants as a result of consumer confusion.

18. The products of Defendants are not only the same type of products and services, but they are sold in the same narrow markets and marketing channels as those of Plaintiff. Defendant's use of Plaintiff's trademarks is likely to cause confusion (and indeed, has caused confusion) among consumers concerning whether Defendants' products and services originated with, or are licensed or authorized or endorsed by, Plaintiff.

19. Attached herewith as Exhibit A is a collection of examples showing Defendants' unauthorized and infringing usage of Plaintiff's trademarks.

20. Defendants' trademark infringement has occurred in interstate commerce and has caused injury to Plaintiff including loss of goodwill and diversion of sales that likely would have been acquired by Plaintiff.

21. Defendants' trademark infringement has caused Plaintiff to suffer actual damages including lost profits, in an amount to be determined at trial, plus consequential damages. Defendants' trademark infringement also has resulted and continues to result in the unjust enrichment via profits to Defendants.

22. Defendants have committed its acts of trademark infringement willfully and maliciously to injure Plaintiff's business and improve their own, thereby entitling Plaintiff to an award of increased damages and attorney's fees.

23. Plaintiff also has suffered and continues to suffer irreparable injury, including damage to its customer relationships because of the trademark infringement. Such irreparable injury cannot be remedied adequately unless

Defendants are enjoined immediately from further use of their infringing trademarks.

24. Plaintiff has no adequate remedy at law for the injuries it has suffered and continues to suffer, as it will be impossible for Plaintiff to determine the precise amount of damage it will suffer if Defendants' conduct is not restrained.

## SECOND CLAIM FOR RELIEF
### (Business Disparagement)

25. Plaintiff incorporates by this reference all of the allegations stated in the above paragraphs.

26. As alleged herein, Defendants have published false and disparaging statements about Plaintiff.

27. Defendants' alleged false and disparaging statements alleged herein were unprivileged.

28. Each Defendant acted with fault, at least negligence, and with actual malice. Each Defendant knew these disparaging statements were false, or recklessly disregarded the truth or falsity of the statements and implications, when they broadcast, published, and republished them.

29. Each Defendant also acted to deliberately and malicious injure Plaintiff out of hatred, ill-will or spite, and/or for improper motives.

30. These false and disparaging statements and implications by Defendants were a substantial factor in causing Plaintiff to suffer irreparable harm to its reputation and suffer economic loss, and Plaintiff is thus entitled to compensatory damages.

31. As a direct and proximate result of these false and disparaging statements and implications by Defendants, Plaintiff has also suffered and will continue to suffer actual, consequential and special damages in an amount that will be determined at trial.

32. Plaintiff is also entitled to punitive damages because Defendants acted with actual malice and ill-will and spite towards Plaintiff and for improper motives.

### THIRD CLAIM FOR RELIEF

**(Intentional Interference With Contractual Relations)**

33. Plaintiff incorporates by this reference all of the allegations stated in the above paragraphs.

34. As alleged herein, Plaintiff has a valid contract with its investors, including Lakestar.

35. Defendants had knowledge of the contracts.

36. Defendants acted intentionally to induce a breach or to disrupt Plaintiff's contractual relationships.

37. These contractual relationships were breached or disrupted.

38. Each Defendant acted with fault, at least negligence, and with actual malice. Each Defendant knew these disparaging statements were false, or recklessly disregarded the truth or falsity of the statements and implications, when they broadcast, published, and republished them.

39. Each Defendant also acted to deliberately and malicious injure Plaintiff out of hatred, ill-will or spite, and/or for improper motives.

40. These false and disparaging statements and implications by Defendants were a substantial factor in causing Plaintiff to suffer irreparable harm to its reputation and suffer economic loss, and Plaintiff is thus entitled to compensatory damages.

41. As a direct and proximate result of these false and disparaging statements and implications by Defendants, Plaintiff has also suffered and will continue to suffer actual, consequential and special damages in an amount that will be determined at trial.

49. Plaintiff is also entitled to punitive damages because Defendants acted with actual malice and ill-will and spite towards Plaintiff and for improper motives.

## FOURTH CLAIM FOR RELIEF

### (Intentional Interference With Prospective Advantage)

42. Plaintiff incorporates by this reference all of the allegations stated in the above paragraphs.

43. An economic relationship between Plaintiff and its investors and potential investors, with the probability of future economic benefit to Plaintiff.

44. Defendants had knowledge of these relationships.

45. Defendants acted intentionally to disrupt these relationships.

46. Each Defendant acted with fault, at least negligence, and with actual malice. Each Defendant knew these disparaging statements were false, or recklessly disregarded the truth or falsity of the statements and implications, when they broadcast, published, and republished them.

47. Each Defendant also acted to deliberately and malicious injure Plaintiff out of hatred, ill-will or spite, and/or for improper motives.

48. These false and disparaging statements and implications by Defendants were a substantial factor in causing Plaintiff to suffer irreparable harm to its reputation and suffer economic loss, and Plaintiff is thus entitled to compensatory damages.

49. As a direct and proximate result of these false and disparaging statements and implications by Defendants, Plaintiff has also suffered and will continue to suffer actual, consequential and special damages in an amount that will be determined at trial.

50. Plaintiff is also entitled to punitive damages because Defendants acted with actual malice and ill-will and spite towards Plaintiff and for improper motives.

## FIFTH CLAIM FOR RELIEF

### (Trademark Misuse)

51. Plaintiff incorporates by this reference all of the allegations stated in the above paragraphs.

52. Defendants have misused their trademark rights by maintaining actions and allegations of trademark infringement without any proof of consumer confusion, much less proof of any violation of Google's advertising policies and longstanding practice.

53. Each Defendant acted with fault, at least negligence, and with actual malice. Each Defendant also acted to deliberately and malicious injure Plaintiff out of hatred, ill-will or spite, and/or for improper motives.

54. Defendants' trademark misuse was a substantial factor in causing Plaintiff to suffer irreparable harm to its reputation and suffer economic loss, and Plaintiff is thus entitled to compensatory damages.

55. As a direct and proximate result of Defendants' trademark misuse, Plaintiff has also suffered and will continue to suffer actual, consequential and special damages in an amount that will be determined at trial.

56. Plaintiff is also entitled to punitive damages because Defendants acted with actual malice and ill-will and spite towards Plaintiff and for improper motives.

### SIXTH CLAIM FOR RELIEF
**(Unfair Competition)**

57. Plaintiff incorporates by this reference all of the allegations stated in the above paragraphs.

58. Defendants' acts as alleged herein constitute unfair competition in violation of Cal. Bus. & Prof. Code §§ 17200 *et seq.* and the common law of California, to the injury of Plaintiff and the public.

59. Plaintiff is entitled to injunctive relief prohibiting Defendants from using infringing trademarks or otherwise competing unfairly, including but not limited to as alleged herein.

## SEVENTH CLAIM FOR RELIEF

### (Declaratory Judgment)

60. Plaintiff incorporates by this reference all of the allegations stated in the above paragraphs.

61. Defendants' misuse of the courts in India and disparaging notice to Plaintiff, both of which are at odds with Google's advertising policies and longstanding practice, has caused reputational and monetary damage to Plaintiff.

62. At a minimum, Defendants' actions have raised a substantial controversy between the parties concerning Plaintiff's similar advertising practices in the United States and around the world.

63. Plaintiff has not infringed any of Defendants' trademarks, or otherwise competed unfairly with Defendants.

64. As such, pursuant to 28 U.S.C. § 2201(a), this Court should "declare the rights and other legal relations of [Plaintiff] seeking such declaration, . . . [which] shall have the force and effect of a final judgment;" specifically, this Court should declare that Plaintiff's use of Google Ads in the United States has not violated and does not violate any trademark or other rights of Defendants.

## PRAYER FOR RELIEF

Therefore, Plaintiff prays for the following relief:

A. An Order preliminarily and permanently enjoining and restraining Defendants from all trademark infringement and/or unfair competition;

B. An Order directing an accounting to determine Defendants' profits resulting from their unlawful activities;

C. An Order awarding Plaintiff compensation for any and all damages, injury or harm, including pursuant to 15 U.S.C. § 1117;

D. An Order awarding Plaintiff treble and/or increased damages resulting from Defendants' willful and intentional conduct, including pursuant to 15 U.S.C. § 1117;

E. An Order that this case is "exceptional" within the meaning of 15 U.S.C. § 1117, and awarding Plaintiff its reasonable costs and attorneys' fees;

F. An injunction requiring Defendants to disavow their disparaging statements in their July 26, 2022 notice;

G. A declaratory judgment that Plaintiff's use of Google Ads in the United States has not violated and does not violate any trademark or other rights of Defendants;

H. Compensatory damages in an amount to be determined at trial;

I. Actual, consequential and special damages in an amount to be determined at trial;

J. Punitive and/or exemplary damages;

K. Reasonable and necessary attorneys' fees;

L. Reasonable and necessary costs of the suit;

M. Prejudgment and post-judgment interest at the highest lawful rates;

N. Declarative and injunctive relief; and

O. Such other and further relief as this Court deems just and appropriate.

## DEMAND FOR JURY TRIAL

Pursuant to Fed. R. Civ. P. 38(b) and L.R. (C.D. Cal.) 38-1, Plaintiff hereby demand a jury trial on all the issues so triable in this action.

Respectfully submitted,

Dated: September 13, 2022     **SML Avvocati P.C.**

By: /s/ Stephen M. Lobbin
Attorneys for Plaintiff

**CERTIFICATE OF SERVICE**

I hereby certify that on September 13, 2022, I electronically transmitted the foregoing document using the CM/ECF system for filing, which will transmit the document electronically to all registered participants as identified on the Notice of Electronic Filing, and paper copies have been served on those indicated as non-registered participants.

/s/ Stephen M. Lobbin